IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

EARL D. PHIFFER,

Petitioner,

v.

BRIAN CAHAK,[1]

Respondent.

OPINION and ORDER

25-cv-236-jdp

Petitioner Earl D. Phiffer, proceeding without counsel, seeks a writ of habeas corpus under 28 U.S.C. § 2254. Phiffer challenges his state-court convictions for delivering cocaine, obstructing an officer, and resisting an officer. Phiffer was charged following a series of controlled buys set up between Phiffer and confidential informants. His charges were split into three criminal cases that were consolidated into two trials. Rock County Case Nos. 2015CF2602, 2016CF1204, and 2016CF1243.

Phiffer contends that at his first trial (1) his equal protection rights were violated by having the only Black prospective juror on the venire panel removed by peremptory strike; (2) his right of confrontation was violated by restrictions on cross-examination of his probation agent; and (3) the evidence was insufficient to support his convictions for delivery of a controlled substance. Phiffer contends that at his second trial (1) his equal protection rights were violated by having zero Black prospective jurors on the venire panel; and (2) he was denied due process when the court denied his request for testing for fingerprints and DNA on the items used in one of the controlled buys.

[1] I've amended the caption to reflect the identity of the current warden at Phiffer's place of confinement.

I conclude that the state court of appeals did not unreasonably apply federal law in rejecting each of these claims. Accordingly, I will deny Phiffer's habeas petition.

## BACKGROUND

The following facts are taken from the petition and the state court records provided by Phiffer and the state.

This case concerns three criminal cases consolidated into two trials, all about Phiffer being charged with selling cocaine after controlled buys were set up by law enforcement using confidential informants to complete drug transactions.

### A. First trial

Rock County Case Nos. 2015CF2602 and 2016CF1204 (involving five counts of drug dealing and a count each for obstruction and resisting an officer) were tried together on September 23 and 24, 2019. This trial concerned five controlled buys between August and December 2015; Phiffer was arrested after the final buy and after he fled from a traffic stop.

During jury selection, the state used a peremptory strike on the only Black juror on the venire panel, a woman who said that she was best friends with the mother of Phiffer's baby. After the jury was sworn, Phiffer's counsel raised a challenge under *Batson v. Kentucky*, 476 U.S. 79 (1986), which the court denied.

The state called police officers who testified about their procedures for controlled buys and using confidential informants in them, and their involvement in the various controlled buys that were the basis for the charges against Phiffer. The state also called two confidential informants who testified that Phiffer sold them cocaine during the controlled buys, and a crime

lab analyst who testified that the drugs recovered from the controlled buys were cocaine. The state produced audio and video of some of the controlled buys.

The state called Karen Hall, Phiffer's probation agent, who first testified outside the presence of the jury in an offer of proof to the court. The court allowed Hall to testify by identifying Phiffer in video footage of a controlled buy, but forbid the state from eliciting from Hall her job as a probation agent, unless defense counsel raised the issue first. Phiffer's counsel cross-examined Hall at trial but did not ask her about being Phiffer's probation agent.

Phiffer didn't testify and he called no witnesses. The jury convicted Phiffer on all counts.

**B. Second trial**

Phiffer's second trial, for Rock County Case No. 2016CF1243, was tried on March 9 and 10, 2020. That case involved four controlled buys between February and June 2016; Phiffer was arrested after the final buy, which took place in the apartment of his then-girlfriend.

The court and parties conducted jury selection without any Black persons on the venire panel. After jury selection, Phiffer's counsel moved for a mistrial, stating, "There is something wrong with how jurors are called to these proceedings if there is not one black person that was called in this panel." Dkt. 11-8, at 75–76.[2] The trial court denied that motion, stating that defense counsel hadn't "met its burden of establishing that there is any sort of discriminatory practice or result" from Rock County's practice of drawing potential jurors from the county's pool of valid driver's licenses. *Id.* at 77.

The state again called law enforcement officers who testified about procedures for controlled buys and their involvement in them, a crime lab analyst who testified that the drugs

[2] For documents submitted by the parties I will refer to the page numbering in the court's electronic filing system rather than the internal pagination of those documents.

recovered from the controlled buys were cocaine, the confidential informant involved in the controlled buys, and audio and video of some of the buys. The state also called Phiffer's wife (who was his girlfriend at the time of the controlled buys) who testified that she wasn't aware of Phiffer's cocaine dealing but was impeached with previously recorded statements suggesting that she was aware.

The jury found Phiffer not guilty of the first three drug-dealing counts but found him guilty of the fourth count, for the buy occurring immediately before his arrest.

### C. Postconviction and appellate proceedings

Phiffer filed postconviction motions regarding both trials. After those motions were denied, his appeals were considered together by the Wisconsin Court of Appeals. Phiffer raised numerous claims, including those that are the subject of this habeas petition. The court of appeals affirmed Phiffer's convictions. *State v. Phiffer*, 2025 WI App 1 (table), 2024 WL 4850535. The Wisconsin Supreme Court denied his petition for review.

## ANALYSIS

To win habeas relief, Phiffer must show that the Wisconsin courts rejected his claims "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). For the state court's application of federal law to be unreasonable, a petitioner "must show that the state court's decision is so obviously wrong that its error lies beyond any possibility for fairminded disagreement." *Shinn v. Kayer*, 592 U.S. 111, 118 (2020) (per curiam).

When applying § 2254(d), courts look to "the last reasoned state-court decision to decide the merits of the case." *See Dassey v. Dittmann*, 877 F.3d 297, 302 (7th Cir. 2017) (en banc); *see also Wilson v. Sellers,* 584 U.S. 122, 125 (2018). In this case, that means that I must review the Wisconsin Court of Appeals' decision rejecting each of the claims that Phiffer brings regarding his two trials.

**A. First trial**

**1. Strike of only Black prospective juror**

Phiffer contends that his equal protection rights were violated by the prosecution striking the only Black juror from the panel. The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution prohibits prosecutors from exercising peremptory challenges on the basis of race. *Batson*, 476 U.S. at 89; *Davis v. Ayala*, 576 U.S. 257, 270 (2015).

Phiffer's *Batson* claim falters without the need to address its substance because he procedurally defaulted it. The Wisconsin Court of Appeals rejected this claim on appeal as forfeited because Phiffer's counsel didn't challenge the peremptory strike until after the jury had been sworn. *Phiffer*, 2024 WL 4850535, ¶¶ 8–9 (citing *State v. Jones*, 218 Wis. 2d 599, 601, 581 N.W.2d 561 (Ct. App. 1998) ("We conclude that the defendant must make a *Batson* objection prior to the time the jury is sworn. If the objection is not made until after that time, the issue is [forfeited].")).

A claim is procedurally defaulted, and thus barred from federal review, if "the last state court that rendered judgment 'clearly and expressly states that its judgment rests on a state procedural bar.'" *Lee v. Foster*, 750 F.3d 687, 693 (7th Cir. 2014) (quoting *Harris v. Reed*, 489 U.S. 255, 263 (1989)) (additional internal quotations omitted). To bar federal habeas

review, the state procedural ground must be "'independent of the federal question and adequate to support the judgment.'" *Id.* (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)). A state law ground is independent "when the court actually relied on the procedural bar as an independent basis for its disposition of the case." *Id.* (internal quotations omitted). "A state law ground is adequate when it is a firmly established and regularly followed state practice at the time it is applied." *Id.* (internal quotations omitted). Wisconsin's forfeiture doctrine as it pertains to *Batson* challenges is an independent and adequate state ground. *See, e.g.*, *Winston v. Noble*, No. 20-cv-1835, 2023 WL 2652175, at *6 (E.D. Wis. Mar. 27, 2023).

Procedural default may be overcome by a showing of "cause and prejudice" or of actual innocence. *Coleman*, 501 U.S. at 750; *Wilson v. Cromwell*, 69 F.4th 410, 421 (7th Cir. 2023). But Phiffer does not address respondent's default argument or otherwise attempt to make a showing that could meet either of these standards. I will deny Phiffer habeas relief on this claim.

**2. Right to confront witnesses**

Phiffer contends that the trial court violated his right to confront witnesses against him by restricting the cross-examination of Karen Hall, his probation agent. The Confrontation Clause of the Sixth Amendment states that "in all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. The court allowed Hall to identify Phiffer on video footage of a controlled buy, but disallowed questioning from the prosecution that would have indicated that she knew Phiffer because she was his probation agent.

The state made an offer of proof to argue for the admissibility of Hall's testimony identifying Phiffer on video footage. Out of the presence of the jury, Hall testified that she was

Phiffer's probation agent and that she recognized him on a video of a controlled buy. On cross-examination, defense counsel attempted to elicit testimony showing that Hall was biased against Phiffer because he had previously defeated her attempt to revoke him for alleged drug deals. The state suggested that if defense counsel brought that up, the state should be able to procure testimony about Phiffer's probation. The court stated:

> I'm telling you right now, there's no way that I'm going to allow her to testify that she's a probation agent in front of the jury, okay? Her profession is not going to be relevant, in my view, because I think it's overly prejudicial to Mr. Phiffer.

Dkt. 11-5, at 350.

After Hall's testimony, the state argued that Hall be allowed to identify Phiffer on the video without referring to her job as a probation agent unless defense counsel cross-examined Hall about Phiffer's probation. Defense counsel stated that "I would agree that the information that I had hoped to get did not come to fruition here, and I certainly understand that I'd have a hard time showing any kind of motive or bias here." *Id.* at 358. Counsel still asked that the video not be admitted, and noted that the jury would wonder why Hall would know Phiffer, yet counsel "couldn't cross-examine her about it, because then I open the door to other horrible things." *Id.* at 359. The court allowed Hall to testify but barred the state from eliciting testimony that she was Phiffer's probation agent unless defense counsel "wishes that door to be opened." *Id.* at 361.

When the trial resumed, the state called Hall, who stated that she had regular contact with Phiffer. The video was played and Hall identified Phiffer on it. Defense counsel did not cross-examine her about Phiffer's probation.

Phiffer argues the court violated his Confrontation Clause rights by restricting the cross-examination of Hall. The Wisconsin Court of Appeals rejected this argument, explaining that

the trial court didn't limit defense counsel; it limited *the state* from eliciting testimony about Hall being Phiffer's probation agent. *Phiffer*, 2024 WL 4850535, ¶ 12.

I agree with the court of appeals' interpretation of the trial court's ruling: the trial court would have allowed defense counsel to cross-examine Hall about her being Phiffer's probation agent, but counsel chose not to because it wouldn't have helped the defense. That was a strategic decision by counsel, not a Confrontation Clause problem. The court of appeals' reasoning was based on correct determinations of the facts and correct analysis of Confrontation Clause law. Phiffer isn't entitled to habeas relief on this claim.

**3. Sufficiency of evidence**

Phiffer contends that the evidence at trial was insufficient to support his convictions for delivery of a controlled substance. In evaluating a sufficiency-of-the-evidence challenge, courts ask "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). This is a difficult standard for a habeas petitioner to overcome.

The Wisconsin Court of Appeals cited the correct standard in evaluating this claim, and concluded that the evidence arrayed against Phiffer—including testimony from the confidential informants directly involved in the controlled buys, testimony from police officers involved in arranging the buys, his identification by Hall and others, and video of some of the buys—was sufficient for the jury to convict him. Phiffer argues that the confidential informants were untrustworthy and that the testimony of one of the undercover officers involved in the transactions was perjury. But defense counsel cross-examined these witnesses and attempted to undermine their credibility. The jury ultimately found them credible enough to help convict

Phiffer. I cannot second-guess those credibility determinations. *Villavicencio-Serna v. Jackson*, 999 F.3d 496, 500–01 (7th Cir. 2021). I agree with the court of appeals that there was ample evidence supporting the jury's verdict, so Phiffer is not entitled to habeas relief on this claim.

**B. Second trial**

**1. Lack of representation on venire panel**

Phiffer contends that his equal protection rights were violated by having zero Black prospective jurors on the venire panel for his second trial.

The Sixth Amendment guarantees a criminal defendant the right to a trial by jury drawn from a source that fairly represents a cross-section of the community. *Taylor v. Louisiana*, 419 U.S. 522, 538 (1975); *Lockhart v. McCree*, 476 U.S. 162, 173 (1986). In *Duren v. Missouri*, 439 U.S. 357 (1979), the Supreme Court articulated the showing necessary to establish a prima facie violation of the Sixth Amendment's fair cross-section requirement: "(1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process." *Id.* at 364.

In rejecting this claim on appeal, the Wisconsin Court of Appeals relied on the third *Duren* factor, explaining that Rock County pulls its prospective jurors from driving records and stating that Phiffer "has not made any showing that the jury selection process systematically excluded African-Americans from the jury panel." *Phiffer*, 2024 WL 4850535, ¶ 19. The Court of Appeals applied the proper *Duren* standard and I agree with its analysis: Phiffer didn't present any evidence suggesting a systematic exclusion of Black people. The mere fact that there were no Black people on the venire panel, without more, isn't enough to win a "fair cross-

section" claim. *See, e.g.*, *United States v. Neighbors*, 590 F.3d 485, 491 (7th Cir. 2009). So Phiffer is not entitled to habeas relief on this claim.

**2. Right to present fingerprint and DNA evidence**

Phiffer contends that the trial court denied his due process right to present a defense when it denied his motion to perform independent testing for fingerprints and DNA on items involved in the June 21, 2016 controlled buy.

"Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (internal quotations and citations omitted). This right is not unlimited. Phiffer must demonstrate that "(1) the testimony would have been 'both material and favorable' to his defense," *Harris v. Thompson*, 698 F.3d 609, 626 (7th Cir. 2012) (quoting *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982)), and "(2) the exclusion was 'arbitrary' or 'disproportionate' to the evidentiary purposes advanced by the exclusion," *id.* (quoting *United States v. Scheffer*, 523 U.S. 303, 308 (1998) (citations omitted)). The exclusion of evidence is "material only if there is a reasonable likelihood that the testimony could have affected the judgment of the trier of fact." *Id.* at 627 (internal quotation omitted).

On appeal, Phiffer contended in part that he needed this evidence to rebut fingerprint and DNA evidence presented by the state. But as the court of appeals correctly responded, the state didn't actually present any fingerprint or DNA evidence about this transaction. As for whether Phiffer's right to present a defense was violated more generally, the trial court stated that Phiffer's request for testing would likely be futile because of the difficulty of recovering

DNA or fingerprints from hand-to-hand drug deals like these, and that there was already other direct evidence tying Phiffer to the transactions.

The court of appeals applied the correct right-to-present-a-defense standard (using slightly different verbiage from *Valenzuela-Bernal*) and concluded that that even had testing revealed no fingerprints or DNA from Phiffer, that result wouldn't be material given the circumstances described by the trial court, stating "such testing was very unlikely to be helpful for the defense given that the alleged controlled buys involved hand-to-hand transactions with CIs who were not wearing gloves and that the CIs were able to personally identify Phiffer as the alleged supplier of the drugs they obtained." *State v. Phiffer*, 2024 WL 4850535, ¶ 29.

Phiffer argues that testing was necessary because the police tampered with the alleged cocaine used in the June 21 controlled buy. But Phiffer didn't bring a claim about testing the authenticity of the cocaine, and he doesn't otherwise explain how alleged tampering with the cocaine would affect the key issue here: Phiffer's identity as the person who sold cocaine to the confidential informant at the June 21 controlled buy.

Phiffer otherwise argues that the confidential informant was unreliable, which I take to be an argument that fingerprint or DNA testing was necessary because it could have affected the jury's verdict for that count given the strength of evidence against him. But I conclude that the court of appeals didn't unreasonably apply the right-to-present-a-defense standard in the context of the second trial. It was sound for the court to conclude that a no-DNA or no-fingerprint result wouldn't materially help Phiffer. *See United States v. Sutton*, 337 F.3d 792, 798 (7th Cir. 2003) ("[T]he lack of a match does not prove that the defendants were not present at the crime scene. In fact, without any additional expert testimony to provide context for the reports' conclusions or with respect to the likelihood of fingerprints being found in

those places and on those surfaces, the probative value of the reports begins to approach zero asymptotically."). This is particularly so in light of the other evidence incriminating Phiffer: the confidential informant's firsthand account of Phiffer selling him cocaine; Phiffer's arrest in the apartment almost immediately after the controlled buy, after police found him hiding in a kitchen cabinet; and police recovering from Phiffer the marked $100 bill that they gave the confidential informant in advance of the controlled buy. Phiffer isn't entitled to habeas relief on this claim.

**C. Certificate of appealability**

The remaining question is whether to grant Phiffer a certificate of appealability. Under Rule 11 of the Rules Governing Section 2254 Cases, I must issue or deny a certificate of appealability when entering a final order adverse to a petitioner. To obtain a certificate of appealability, the applicant must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Tennard v. Dretke*, 542 U.S. 274, 282 (2004). This means that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotations and citations omitted). Because I find that no reasonable jurist would debate the outcome here, I will not issue Phiffer a certificate of appealability. He may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22.

# ORDER

IT IS ORDERED that:

1. The caption is AMENDED as set forth above.
2. Petitioner Earl D. Phiffer's petition for a writ of habeas corpus under 28 U.S.C. § 2254, Dkt. 1, is DENIED.
3. Petitioner is DENIED a certificate of appealability.
4. The clerk of court is directed to enter judgment and close the case.

Entered November 17, 2026.

BY THE COURT:

/s/

JAMES D. PETERSON
District Judge